IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SANDRA D. STOVER,

        **Plaintiff,**

v.                                               Civil Action 2:20-cv-2742
                                                    Judge Michael H. Watson
                                                    Magistrate Judge Jolson

**COMMISIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Sandra D. Stover, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.**        **BACKGROUND**

On July 22, 2013, Plaintiff filed her first applications for DIB and SSI, which were denied by administrative decision on December 15, 2015. (Tr. 15–16, 103–28). More recently, on March 7, 2016, Plaintiff filed a second application for DIB and SSI alleging disability beginning December 16, 2015. (Tr. 324–36). After her applications were denied initially and on reconsideration, the Administrative Law Judge ("ALJ") held two hearings to address the vocational expert testimony. (Tr. 37–69, 70–102). On February 11, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits. (Tr. 12–36). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

On May 27, 2020, Plaintiff filed the instant case seeking review of the Commissioner's decision. (Doc. 1). The Commissioner filed the administrative record on November 9, 2020. (Doc. 16). Shortly thereafter, Plaintiff filed her Statement of Errors (Doc. 17) and the Commissioner filed his Opposition (Doc. 19). As Plaintiff did not file a reply, this matter is now ripe for review.

### A. Plaintiff's Function Report

To begin, the ALJ summarized Plaintiff's activities from her Function Report filed with the agency:

> [I]n her Function Report, [Plaintiff] indicated that she helps take care of animals, has no problems with personal care, needs no special reminders to take care of her needs or take medicine, and prepares her own meals. Moreover, she stated that she does household chores, has her driver's license and can drive alone, and shops. Additionally, she indicated that she gets along with authority figures and has never been terminated from a position because of an inability to get along with others. (Exhibit B4E).

(Tr. 26).

### B. Relevant Medical History

Because Plaintiff attacks only the ALJ's treatment of her mental impairments, the Undersigned focuses on the same. The ALJ summarized the relevant medical records and hearing testimony:

> [While] the record reflects additional mental health diagnoses, there does not appear to be any change in the [Plaintiff]'s mental functioning from the date of the prior decision. Notably, her treatment has continued to be limited to prescription medication and therapy, with no evidence of long-term inpatient treatment or hospitalizations due to mental health concerns. Moreover, observations of the [Plaintiff] throughout her medical appointments are unremarkable, which while finding her to have symptoms of anxiety and depression also found her to be alert and oriented, with intact judgment, proper to mildly hindered cognition, average intelligence, normal thought process and associations, and intact memory. (*See* Exhibit B2F/5, B3F/5, Exhibit B8F/4, B9F/4, 6, 8, B10F/25, B11F/2, 6, 10, 14, 22, 26, 28, B14F/1, 5, 12, B19F/7, 9, 18, 20).

(Tr. 20).

> Furthermore, the [Plaintiff]'s therapy notes indicate that when compliant with treatment, her mental health symptoms are well controlled. For example, she treated at Family Care behavioral beginning in February 2016, where she indicated that she had been on medication for over a year and was not seeing improvement, resulting in a change in her treatment plan. (Exhibit B9F/11-14). Following this change, in March of 2016, she was improving and by October of 2016, she was "doing good." (Exhibit B9F/8-10). In December of 2016, she was still doing well, and by March of 2017, her anxiety and depression are found to be under control. (Exhibit B9F/2, 6). In February of 2018, she presented to Southeast Healthcare Services, where her symptoms were reported as "mild." (Exhibit B14F/3). In May of 2018, she reported "overall improvement of mood and sleep." (Exhibit B19F/8). By November of 2018, she was discharged from treatment, reporting that she was "satisfied with her progress." (Exhibit B19F/1). As such, the record indicates that her mental health symptoms are well controlled through proper adherence to treatment, and do not support a material change in the [Plaintiff]'s mental condition from the date of the prior decision.
>
> Further support for this finding comes from the observations of the [Plaintiff] at her routine medical appointments and her activities of daily living. Specifically, observations of the [Plaintiff] throughout her medical appointments are unremarkable, which while finding her to have symptoms of anxiety and depression also found her to be alert and oriented, intact judgment, proper to mildly hindered cognition, average intelligence, normal thought process and associations, and intact memory. (*See* Exhibit B2F/5, B3F/5, Exhibit B8F/4, B9F/4, 6, 8, B10F/25, B11F/2, 6, 10, 14, 22, 26, 28, B14F/1, 5, 12, B19F/7, 9, 18, 20).

(Tr. 24).

    C.    **The ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirement through June 30, 2018, and had not engaged in substantial gainful employment since the alleged onset date—December 16, 2015. (Tr. 18). The ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease and osteoarthritis of the knees; chronic obstructive pulmonary disease; bilateral hearing loss; anxiety disorder; depressive disorder; unspecified mood disorder; agoraphobia; post-traumatic stress disorder; panic disorder; and bipolar disorder. (*Id*.). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed

3

impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: frequent exposure to extreme temperatures, humidity, atmospheric conditions, and pulmonary irritants; frequent exposure to vibration; can frequently operate foot controls; occasional climbing of ramps and stairs; occasional stooping, kneeling, and crouching; no crawling or climbing of ladders, ropes, and scaffolds; no loud work environments as that is defined in the DOT/SCO; no fast production pace work; no more than occasional interaction with supervisors and coworkers; no interaction with the public; no tandem tasks; and no more than occasional changes in the work setting that are explained in advanced.

(Tr. 21).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the evidence for the reasons explained in this decision." (Tr. 22). Specifically, as to Dr. Haggenjos' mental health source opinion, the ALJ determined,

> [T]he opinions of Jeffrey Haggenjos, D.O. . . . [is] afforded little weight. Dr. [Haggenjos] found that the [Plaintiff] experienced "marked" mental limitations in five functional categories, and an "extreme" limitation in ten functional categories, as well as a finding that she would miss more than five days per month due to mental health concerns. (Exhibit B16F). . . . As shown in the analysis above, the medical evidence does not support a finding that the [Plaintiff] has "marked" or "extreme" limitations in any functional category. Specifically, her treatment regarding these impairments has been conservative, and limited to prescription medication and therapy. (*See generally* Exhibits B1F-B12F). Further, frequent observations of an alert and oriented, intact judgment, proper to mildly hindered cognition, average intelligence, normal thought process and associations, and intact memory. (*See* Exhibit B2F/5, B3F/5, Exhibit B8F/4, B9F/4, 6, 8, B10F/25, B11F/2, 6, 10, 14, 22, 26, 28, B14F/1, 5, 12, B19F/7, 9, 18, 20; *see generally* Exhibits B1F-B20F). Additionally, in her Function Report she indicated that she helps take care of animals, has no problems with personal care, needs no special reminders to take care of her needs or take medicine, and prepares her own meals. Moreover, she stated that she does household chores, has her driver's license and can drive alone, and shops. Additionally, she indicated that she gets along with authority figures and has never been terminated from a position because of an inability to get along with others. (Exhibit B4E). As such, the totality of the medical evidence does not support findings of "marked" and "extreme" limitations in any functional category,

and are afforded little weight.

(Tr. 25–26). Furthermore, relying on the VE's testimony, the ALJ concluded that Plaintiff is able to perform her past relevant work as an order filler as well at other jobs that exist in significant numbers in the national economy. (Tr. 26–28).

Based on these findings, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 16, 2015, through the date of the decision (20 CFR 404.1520(g) and 416.920(g))." (Tr. 28).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of H.H.S.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III. DISCUSSION

In her sole assignment of error, Plaintiff alleges that the ALJ erred by improperly evaluating and weighing the mental health source opinion evidence from treating source, Dr. Haggenjos. (*See* Doc. 17 at 8–16). Specifically, Plaintiff claims that "[t]he ALJ did not properly

5

evaluate Dr. Haggenjos' mental health opinions under the factors prescribed in 20 C.F.R § 404.1527(c)[,]" and further, did not "provide 'good reasons' for discrediting the findings of Dr. Haggenjos." (*Id*. at 11–12). Defendant, conversely, argues that "the ALJ reasonably discounted [Dr. Haggenjos'] opinion because it was inconsistent and unsupported by the evidence of record . . . " (Doc. 19 at 1).

### A. Dr. Haggenjos' Opinion

Two related rules govern how an ALJ is required to analyze a treating physician's opinion. *Dixon v. Comm'r of Soc. Sec.*, No. 3:14-cv-478, 2016 WL 860695, at *4 (S.D. Ohio Mar. 7, 2016). The first is the "treating physician rule." *Id*. The rule requires an ALJ to "give controlling weight to a treating source's opinion on the issue(s) of the nature and severity of the claimant's impairment(s) if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Closely associated is "'the good reasons rule,' which 'require[s] the ALJ to always give good reasons . . . for the weight given to the claimant's treating source opinion.'" *Dixon*, 2016 WL 860695, at *4 (alterations in original) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)); 20 C.F.R. § 404.1527(c)(2). To meet the "good reasons" standard, the ALJ's determination "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). Specifically, if an ALJ:

> declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion

6

with the record as a whole, and specialization of the treating source."
*Fletcher v. Comm'r of Soc. Sec.*, 9 F. Supp. 3d 817, 828 (S.D. Ohio 2014) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); *see also* 20 C.F.R. § 406.1527(c)(2)–(6) (setting forth the relevant factors). The treating physician rule and the good reasons rule together create what has been referred to as the "two-step analysis created by the Sixth Circuit." *Allums v. Comm'r of Soc. Sec.*, 975 F. Supp. 2d 823, 832 (N.D. Ohio 2013).

Importantly, while the ALJ must "balance" the *Wilson* factors when declining to afford a treating physician's opinion controlling weight, there is no requirement that the ALJ "expressly consider" each factor within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x. 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all the [*Wilson*] factors for weighing medical opinion evidence within the written decision).

Here, the ALJ afforded the opinion of Dr. Haggnjos "little weight," opining that "the medical evidence does not support a finding that the claimant has 'marked' or 'extreme' limitations in any functional category. (Tr. 26). While the ALJ may not have explicitly discussed each *Wilson* factor in her opinion, she provided "good reason" for discounting the opinion, so much so that Plaintiff is able to "understand the disposition of her case." *See Wilson*, 378 F.3d at 544–45. Specifically, the ALJ noted that—contrary to Dr. Haggenjos' opinion—the record showed Plaintiff had "an alert and oriented, intact judgment[;] proper to mildly hindered cognition[;] average intelligence, normal thought process and associations[;] and intact memory." (*Id*.; *see also* Tr. 488, 493, 578, 588, 592, 623, 631, 635, 639, 643, 651, 657, 668, 672, 679, 707, 709, 718, 720 (noting Plaintiff's normal judgment, cognition, intelligence, thought processes and associations); Tr. 588, 590, 655 (noting Plaintiff's intact memory). Furthermore, the ALJ found that the state

agency psychological assessments at the initial and reconsideration levels, which were afforded significant weight, further contradicted Dr. Haggenjos' opined "extreme limitations." (Tr. 24–26). Specifically, the ALJ found these opinions "persuasive" as they too supported the frequent findings of Plaintiff's "alert and oriented, intact judgment[;] proper to mildly hindered cognition[;] average intelligence, normal thought process and associations[;] and intact memory." (Tr. 24).

Plaintiff's argument that "the presence of these mental functions does not eliminate the possibility of other severe impairments" is of little consequence. While, as Plaintiff points out, the ALJ "must provide a logical path of reasoning from the evidence to the ALJ's conclusion[,]" there is no requirement that the ALJ make "explicit credibility findings as to each bit of conflicting testimony, so long as [her] factual findings as a whole show that [she] implicitly resolve[d] such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006). Upon review, the undersigned is satisfied that the ALJ's analysis of Dr. Haggnjos' opinion juxtaposed with the other contradictory evidence highlighted above, sufficiently "ensures that [the] claimant will understand the ALJ's reasoning." *Peirce v. Saul*, No. 3:20-cv-0248, 2021 WL 606369, at *4 (N.D. Ohio Jan. 25, 2021) (recognizing that the "logical bridge requirement" exists "because it ensures that a claimant will understand the ALJ's reasoning").

Furthermore, Plaintiff's contention that Dr. Haggnjos' opinion "should not be discredited because [Plaintiff] did not receive alternative forms of treatment[,]" is similarly meritless. (*See* Doc. 17 at 14). While the ALJ considered Plaintiff's "conservative" treatment of prescription medication and therapy, to support her decision to afford Dr. Haggnjos' opinion little weight, such consideration was proper. *See Lester v. Soc. Sec. Admin.*, 596 Fed. App'x 387, 389 (6th Cir. 2015) (holding that and ALJ did not err in properly considering plaintiff's "conservative treatment" in concluding he was not suffering from disabling impairments); *Kepke v. Comm'r of Soc. Sec.*, 636

8

F. App'x 625, 631 (6th Cir 2015) (holding that conservative treatment was a valid reason to discount a treating physician's opinion).

Finally, and similarly meritless, is Plaintiff's contention that ALJ's erred in her consideration of Plaintiff's daily activities. (Doc. 17 at 15–16). Plaintiff argues that "the ALJ seeks to discredit Dr. Haggenjos' opinion by stating that [Plaintiff] can and does perform chores." (*Id*. at 16). What Plaintiff is referencing is the ALJ's conclusion that the representations in her Function Report—that she performs significant, normal daily activities—contradicts the extreme limitations opined by Dr. Haggenjos. (Tr. 20).

"An ALJ not only is permitted to consider a claimant's level of daily activities in assessing [her] credibility, but is generally required to do so." *Kyle v. Comm'r of Soc. Sec.*, No. 1:12-cv-748, 2013 WL 5925777, at *8 (S.D. Ohio Oct. 31, 2013) (citing 20 C.F.R. § 404.1529(c) (3)). Here the ALJ found that Plaintiff's daily activities—taking care of animals, preparing her own meals, doing household chores, driving and shopping alone—were inconsistent with the extreme limitation opined by Dr. Haggenjos. (Tr. 20). Furthermore, Plaintiff's representations that "she gets along with authority figures and has never been terminated from a position because of an inability to get along with others[,]" similarly contradict Dr. Haggenjos' opinion that she would struggle with several workplace activities due to her mental health limitation. (Tr. 26; *see also* Doc. 17 at 12). The state agency psychological assessments too support the ALJ's conclusion in this regard. (Tr. 129–54, 157–82). This inconsistency, coupled with the contradictory medical record evidence discussed above, undermines Plaintiff's disability claim and constitutes "good reason" for affording Dr. Haggenjos' opinion "little weight." *See Hummel v. Comm'r of Soc. Sec.*, No. 2:16-cv-937, 2018 WL 1373869, at *3 (S.D. Ohio Mar. 19, 2018) (holding that the ALJ did

9

not err in discrediting a treating physician's opinion where there was inconsistency with record evidence, including claimant's daily activities).

At base, the ALJ found that taken together—the medical record evidence, the state agency psychological assessments, Plaintiff's continued "conservative treatment," and her daily activities—all contradict the extreme limitations opined by Dr. Haggenjos. By identifying and discussing this contradictory evidence, the Undersigned is satisfied that the ALJ provided "good reasons" for her decision not to afford Dr. Haggenjos' opinion controlling weight. Accordingly, as she has complied with the Sixth Circuit's "two-step analysis," she has committed no reversible error.

### IV. CONCLUSION

Based on the foregoing, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:  March 30, 2021 /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE